Diana Witherspoon et al. v. Mrs. E. K. Jernigan et al.

No. 1245.   Decided November 5, 1903.

**1.—Statutory Construction—"And" Meaning "Or."**

Where a literal interpretation of the words of a statute produces an absurdity, they may be restricted or enlarged to conform to the general purposes and intent of the Legislature, as by taking the word "and" in the sense of "or." (Pp. 105, 106.)

**2.—Same—Descent—Art. 1695, Rev. Stats., Construed.**

Art. 1695, Rev. Stats., is to be construed as though reading: "When * * * any other relations of the deceased standing in the first degree come alone into the partition they shall take per capita, that is to say, by persons, and when any other relations of the deceased standing in the same degree come alone into the partition, they shall take per capita, that is by persons." (P. 106.)

**3.—Same—Case Stated.**

A decedent leaving neither children, parents, nor their descendants, nor grandparents, had for kindred on the paternal side the descendants of three aunts,—of one, a child still living; of another, four children still living and four children of a child deceased; of the third, six children of one deceased child and two of another. Held, that the paternal half of deceased's estate should be divided into eight equal parts, one to be allotted to each of the five surviving first cousins, and one to the descendant's of each of the three deceased first cousins. (Pp. 103-106.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

Diana Witherspoon and others obtained writ of error upon a judgment of the Court of Civil Appeals reversing and rendering against them a judgment of the District Court in their favor on appeal from the County Court in the distribution of an estate.

This case appears in the Court of Civil Appeals as Jernigan v. Lauderdale, 73 S. W. Rep., 39.

*Taylor & Coombes,* for plaintiff in error.—The seven-twelfths of the estate of S. P. Emerson, deceased, in controversy herein, under the law, was divided into two moieties, one to go to the paternal and the other to the maternal kindred; and there was thereby created two separate and distinct estates, the basis of distribution in one in no way affecting the basis of distribution in the other.   Rev. Stats., art. 1688; Jones v. Barnett, 30 Texas, 638; McKinney v. Abbott, 49 Texas, 371; Young v. Gray, 60 Texas, 541.

First cousins being the nearest kindred of the deceased on the paternal side, remaining in being at his death, are the basis of distribution, and inherit per capita; second cousins, children of deceased first cousins, inherit per stirpes, on only such part as their parents would take if alive. Rev. States., art. 1695; Code of Virginia (1873), p. 917, chap. 119, sec. 3; 2 Minor's Ins., 537-8-9; Davis v. Rowe, 6 Rand, 363; Ball v. Ball, 27 Grat., 325; Powers v. Morrison, 88 Texas, 137.

*Crane, Greer & Wharton,* for defendant in error Wheeler.—If article 1695 has any application to the facts in this case at all, then it would control article 1688, and the estate of S. P. Emerson would not be

divided into two moieties, but the whole estate would be distributed between all the heirs; both on the maternal and paternal side, without distinction. Garner v. Stubblefield, 5 Texas, 554; Perez v. Perez, 59 Texas, 324; Erwin v. Blanks, 60 Texas, 585; Gulf, C. & S. F. Ry. Co. v. Rambolt, 67 Texas, 656; Sedgwick on Const. and Stat. Law, sec. 242; Runnels v. Belden, 51 Texas, 50; Dodson v. Bunton, 81 Texas, 658.

If the estate of S. P. Emerson is to be divided into two moieties, and one of said moieties goes to the paternal kindred and one to the maternal kindred, then article 1695 has no application to the facts presented in this record, and does not control the distribution of the estate as between the paternal heirs.

When the intent of the Legislature is plain, that construction should be given to the act which will effectuate that intention. Thompson v. Buckley, 1 Texas, 33; De Leon v. Owen, 3 Texas, 153; Runnels v. Belden, 51 Texas, 50; Dodson v. Bunton, 81 Texas, 658; Snoddy v. Cage, 5 Texas, 110.

As article 1695 does not provide for the distribution of this estate, and is inapplicable thereto, the estate should have been divided per stirpes, under article 1688. Sneed v. Falls County, 91 Texas, 170; 24 Am. and Eng. Enc. of Law, 1 ed., p. 379 et seq., and note 1, p. 380; 2 Blackstone's Comm., p. 217; 3 Washburn on Real Prop., p. 407; 2 Minor's Ins., p. 461; Davis v. Vanderveers, 23 N. J. Eq., 558; Dutoit v. Doyle, 16 Ohio St., 400; 1 Blackstone's Comm., p. 517, 218.

*W. P. Finley,* for defendants in error D. A. Emerson et al.—In view of the uncontradicted facts of the said case, and by virtue of the rules and principles of the common law governing and regulating the partition and distribution of the estates of decedents, the partition and distribution of the maternal and paternal moieties of the seven-twelfths of the estate of S. P. Emerson, deceased, should be made upon a per stirpes basis.

In view of the uncontradicted facts of the said case, and by virtue of section 4 of article 1688, Revised Statutes of Texas, the portion of the section in question being as follows: "If there be no surviving grandfather or grandmother then the whole of such estate shall go to their descendants, and so on without end," the partition and distribution of the maternal and paternal moieties of the seven-twelfths of the estate of S. P. Emerson, deceased, should be made upon a per stirpes basis.

In view of the uncontradicted facts of the said case, and by virtue of the latter portion of article 1695, Revised Statutes of Texas, which latter portion of said article is as follows: "And when a part of them being dead, and a part living, the descendants of those dead have right to partition, such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive," the partition and distribution of the maternal and paternal moieties of the seven-twelfths of the estate of S. P. Emerson, deceased,

should be made upon a per stirpes basis. Sec. 4, art, 1688, Revised Statutes; art. 1695, Revised Statutes; 1 Blackstone, Book 2, pp. 215, 217, 218, 517, etc.; Anderson's Dictionary of Law, p. 149, head, "Capita;" Powers v. Morrison, 88 Texas, 136.

At common law the same rules govern the partition and distribution of real and personal property. The Texas statutes contemplate no distinction in the partition and distribution of real and personal property. Anderson's Dictionary of Law, p. 149, head, "Capita;" 1 Blackstone, book 2, pp. 517, 218.

A per capita partition and distribution of the maternal and paternal moieties of the said seven-twelfths of the estate of S. P. Emerson, deceased, does not arise under article 1695, Revised Statutes of Texas.

In order to bring the partition and distribution of an estate of a decedent within the operation of the per capita rule set forth in the said statute, the heirs, who come into such partition and distribution, must stand in the "first and same degree alone" with respect to such decedent. Rev. Stats., art, 1695.

The words, "first and same degree alone," as used in the said statute, which words alone give occasion to the operation of a per capita rule in Texas, have each a meaning, as well as a purpose, in the said statute. The words "first degree" indicate the degree of relationship in which all the heirs must stand with respect to the decedent in order to invoke the said rule, and they limit the operation of the per capita rule by requiring all the participants in the said partition and distribution to stand in the first degree. The words "same degree" carry with them their own necessary meaning and exclude the idea that the per capita rule can be applied where the said heirs stand in different degrees. The words "first and same degree," as employed in the said statute, accomplish, when properly considered together, two purposes therein, viz: the said words not only limit the participants in the said partition and distribution to the first degree, but they prevent the operation of the per capita rule, where some of the heirs are in the first degree, and all the others are children or descendants of those who would have been in the first degree if alive, for the simple reason that the children or descendants of those dead stand in other degrees than the first degree. The word "alone," as used in the said statute, accomplishes, among others, three purposes, viz: 1. It emphasizes the above stated interpretation of the meaning of first degree. 2. It refutes the contention that the per capita rule can be applied where some of the relatives of the decedent are in the first degree, and all the others are children or descendants of those who would have been in the first degree if alive. 3. It negatives the doctrine that an estate of a decedent is divided into two separate estates, as between paternal and maternal kindred.

First cousins are in the second degree, and second cousins are in the third degree. Minor's Ins., book 2, p. 524; 1 Blackstone, book 2, p. 206.

The words, "or any other relations of the deceased, standing in the

first" degree, as used in the said statute, are not idle or superfluous terms therein, because the said statute does not specifically enumerate all the relatives of a decedent who stand in the first degree. For instance, fathers and mothers are in the first degree, and are not specifically enumerated by the said statute, and they fairly come under the expression above set forth.

The Legislature has the power to arbitrarily change the rules governing the descent and distribution of property, and has the power to arbitrarily place other relatives of a decedent in the first degree, should it consider it advisable to do so. In the event that this right is exercised, article 1695 would be applicable without change to the new condition. In practical effect the Legislature has already placed uncles and aunts in the first degree.

From 1840 until 1887 the statute, with respect to the per capita and per stirpes partition and distribution of an estate of a decedent read as follows: "Where the children of the intestate's brothers and sisters, uncles and aunts, or any other relations of the deceased standing in the same degree, come into the partition, they shall take per capita, that is to say, by persons; and where a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take per stirpes, or by stocks, that is to say, the shares of their deceased parents." On March 25, 1887, the Legislature amended the said statute, which thereafter was, as well as now is, as follows: "When the intestate's children, or brothers and sisters, uncles and aunts, or any other relations of the deceased standing in the first and same degree alone, come into the partition, they shall take per capita, that is to say, by persons; and when a part of them being dead and a part living, the descendants of those dead have right to partition, such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive." Under the conditions above outlined it is a familiar principle in the interpretation of written laws that when the words of a new statute differ materially from those used in a prior act upon the same subject, they are to have a different and not the same construction. The Legislature has the right to alter existing statutes, and it must be presumed that they exercised this right when they deliberately expunged from a law terms of comprehensive signification and inserted those of a more restricted meaning. Burgess v. Hargrove, 64 Texas, 115.

If, in a subsequent statute upon the same subject as a former one, the Legislature uses different language in the same connection, the courts conclude that a change of the law was not only intended to be made, but was actually made by the Legislature. Black, Interp. of Laws, 191; Sneed v. Falls County, 91 Texas, 170; Bradling v. Barrington, 6 Barn. & C., 467; Guthrie v. Fisk, 3 Barn. & C., 178; Suth. Stat. Const., sec. 238.

The objects and purposes of the said amendment of 1887, which provided for a per capita and a per stirpes partition and distribution

of an estate of a decedent, were to declare under what circumstances those entitled to the inheritance should take per capita, and under what contingencies they should take per stirpes. The first portion of the said amendment, which is as follows: "When the intestate's children, or brothers and sisters, uncles and aunts, or any other relations of the deceased, standing in the first and same degree alone, come into the partition, they shall take per capita, that is to say, by persons," sets forth the circumstances under which the estate would be partitioned and distributed upon a per capita basis, and the latter section of the said amendment, which is as follows: "When a part of them being dead, and a part living, the descendants of those dead have right to partition, such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive," sets forth the contingencies under which the estate would be partitioned and distributed upon a per stirpes basis. Powers v. Morrison, 88 Texas, 136.

The word "parent," as used in the latter portion of article 1695, Revised Statutes, is employed therein in the sense of ancestor. 2 Kent, p. 159; Ralph v. Carrick, 11 Ch. Div., 873; Suth. Stat. Const., sec. 219; Mitchell v. Thorne, 134 N. Y., 540; Bates v. Gillett, 132 Ill., 287; Baker v. Baker, 8 Gray (Mass.), 101.

If the court should conclude that the latter portion of article 1695, Revised Statutes, does not set forth the contingencies under which an estate should be partitioned and distributed upon a per stirpes basis, or if the court should conclude that the said latter portion of the said article is merely auxiliary to the operation of the per capita rule set forth in the first section of the said act, in that event it is plain that the said latter portion of the said article would be limited and controlled by the first section of the said article, and would be only operative or effective in cases where some of the heirs stood in the first degree, and all the other heirs were children or descendants of those who would have been in the first degree if alive. Under the conditions above suggested the statute would have no application to the facts of this case.

The principal results accomplished by the said amendment of 1887, by way of change of, substitution for and addition to the said prior act were as follows: 1. The said amendment brought the intestate's children within the operation of the per capita rule. 2. It omitted the children of brothers and sisters and of uncles and aunts from the operation of the per capita rule. 3. It limited the operation of the per capita rule to the first degree. 4. It prevented the operation of the per capita rule in cases where some of the heirs were in the first degree, and all the others were children or descendants of those, who would have been in the first degree if alive. 5. It established, in the latter section of the amendment of 1887, a per stirpes rule, applicable to all cases to which the first section of the said amendment, which alone sets forth the per capita rule, does not apply.

The reasons which caused the enactment of the said amendment of

1887, and justified the provisions of the same, no doubt existed in the fact that the Legislature considered it right and proper to apply the per capita rule only in cases where all the heirs stood equally in a close and near relationship with respect to the decedent, and that degree of relationship, which was considered sufficiently close and near with respect to the intestate to occasion the operation of the per capita rule, was placed by the Legislature at the first degree and was limited to that degree only.

BROWN, ASSOCIATE JUSTICE.—We copy from the opinion of the Court of Civil Appeals the following statement of the case and conclusions of fact:

"This suit originated on motion filed by appellants and other heirs of the estate of S. P. Emerson, deceased, in the County Court sitting for probate purposes, against Diana Witherspoon and G. E. Wheeler, to partition seven-twelfths of the estate of S. P. Emerson, deceased, among them, plaintiffs as well as defendants. The contention of plaintiffs was that such part of the estate should be partitioned and distributed upon a per stirpes basis.

"The defendants, Diana Witherspoon and Z. E. Wheeler, answered admitting the facts plead by plaintiffs, which are recited in our conclusions of fact, but contended for partition and distribution upon a per capita basis.

"In the County Court judgment was rendered in accordance with plaintiffs' contention, which upon appeal to the District Court was set aside and judgment there entered in consonance with the contention of the defendants. From this judgment M. B. Wheeler, D. A. Emerson, John C. Emerson, Mary E. Butler and her husband B. F. Butler, Jas. C. Emerson, W. R. Emerson, Ida Wilson and her husband Geo. Wilson, Mattie Kinslow and John Emerson have appealed.

Conclusions of Fact.—" 'When S. P. Emerson died on the 16th day of October, A D. 1900, he did not leave surviving him a wife, or child, or children, or their descendants, or brothers, or sisters, or their descendants, or father or mother, or grandfather, or grandmother. He did, however, leave surviving him one aunt and the descendants of two other aunts on the maternal side, and the children or descendants of three aunts on the paternal side. In any event, then, the seven-twelfths of the estate of S. P. Emerson, deceased, to which his heirs at law were entitled, would be divided into two moieties, the maternal moiety and the paternal moiety. With respect to the maternal moiety the facts of kinship were as follows: The mother of S. P. Emerson, deceased, namely, Oney Randle Emerson, had three sisters, Mrs. E. K. Jernigan, Mrs. Tabitha Walters and Mrs. Lucy Travis. Mrs. E. K. Jernigan is still living and participated in the partition and distribution of the said estate. Mrs. Tabitha Walters is dead, but left surviving her a daughter, Mrs. Elizabeth Irion. Mrs. Elizabeth Irion is dead, but left surviving her one son and four daughters,—J. W. Irion, Iva Harris, May Aden, Pearl

Irion and Bessie Irion. Mrs. Lucy Travis is dead, but left surviiving her three children,—Lyttleton W. Travis, Joe Travis and Lucy Harris. Lyttleton W. Travis is still living. Joe Travis is dead, but left surviving him a daughter, Mrs. Anna McElwrath. Mrs. Lucy Harris is dead, but left surviving her a daughter, Mrs. Emma Walker. Mrs. Emma Walker is dead, but left surviving her three children,—W. L. Walker, A. H. Walker and Lucy Walker. In the case, then, of the maternal moiety, of the said portion of the said estate, when S. P. Emerson died he left surviving him one aunt, Mrs. E. K. Jernigan; one first cousin, Lyttleton W. Travis, and nine second cousins,—J. W. Irion, Iva Harris, May Aden, Pearl Irion, Bessie Irion, Anna McElwrath, W. L. Walker, A. H. Walker and Lucy Walker. With respect to the paternal moiety the facts of kinship were as follows: The father of S. P. Emerson, deceased, namely, Pleas Emerson, had three sisters,—Mrs. Mary Wheeler, Mrs. Julia Wheeler and Mrs. Susan Emerson. They are each dead. Mrs. Mary Wheeler left surviving her a son, M. B. Wheeler. Mrs. Julia Wheeler left surviving her five children,—Mrs. Susie Bostic, Diana Witherspoon, Z. E. Wheeler, J. H. Wheeler and Tom Wheeler. Mrs. Susie Bostic is dead, but left surviving her four children,—Lizzie Carter, Nannie Carter, W. T. Bostic and L. F. Stinnett. Mrs. Susan Emerson is dead, but left surviving her two sons,—William Emerson and Joe Emerson. William Emerson is dead, but left surviving him six children,—D. A. Emerson, John C. Emerson, Mary E. Button, James C. Emerson, W. R. Emerson and Ida Wilson. Joe Emerson is dead, but left surviving him two children,—Mattie Kinslow and John Emerson.'

"It will be observed from these facts that the heirs of the deceased on the paternal side are five first cousins and twelve second cousins."

Article 1688 of the Revised Statutes prescribes the rule for determining what persons are entitled to participate in the distribution of the estates of all persons who die intestate leaving no surviving husband or wife, as follows: First, to the children and their descendants. Second, if there be no children nor their descendants, then to the father and mother equally, but if only one parent survives, then one-half to go to the surviving parent and the other half to the brothers and sisters and their descendants; "if there be none such," the whole to go to the surviving parent, and if there be no surviving parent, "then the entire estate shall go to the brothers and sisters or their descendants."

Subdivision 4 of the said article is in these words: "If there be none of the kindred aforesaid, then the inheritance shall be divided into two moieties, one of which shall go to the paternal and the other to the maternal kindred, in the following course, that is to say: To the grandfather and grandmother in equal portions, but if only one of these be living, then the estate shall be divided into two equal parts, one of which shall go to such survivor, and the other shall go to the descendant or descendants of such deceased grandfather or grandmother. If there be no such descendants then the whole estate shall be inherited by the surviving grandfather or grandmother. If there be no surviving grand-

father or grandmother, then the whole of such estate shall go to their descendants, and so on without end, passing in like manner to the nearest lineal ancestors and their descendants."

The estate of S. P. Emerson comes strictly within the terms of the fourth subdivision, and the trial court properly divided the estate into two equal parts, each of which for the purposes of distribution became a separate estate, one to go to the maternal and the other to the paternal kindred. McKinney v. Abbott, 49 Texas, 371.

The heirs being ascertained, the following article of the Revised Statutes governs the distribution of the property among those entitled to receive it:

"Art. 1695. When the intestate's children, or brothers and sisters, uncles and aunts, or any other relations of the deceased standing in the first and same degree alone come into the partition, they shall take per capita—that is to say, by persons; and when a part of them being dead and a part living, the descendants of those dead have right to partition, such descendants shall inherit only such portion of said property as the parent through whom they inherit would be entitled to if alive."

The former law on the subject was in this language: "Where the children of the intestate's brothers and sisters, uncles and aunts, or any other relations of the deceased standing in the same degree, come into the partition, they shall take per capita, that is to say, by persons; and where a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take per stirpes, or by stocks, that is to say, the shares of their deceased parents."

Article 1695 was enacted as an amendment to the former law by the Legislature at its session in 1887, and it was intended to enlarge the scope of the provisions of the repealed law so as to include all persons who might be entitled to participate in a partition. The amendment did not in fact enlarge the scope of the act, except that it mentioned several classes of heirs which were not expressly stated in the old law, but were embraced in the general language, "any other relations of the deceased standing in the same degree." The purpose of the Legislature in enacting both laws was to define what classes of persons should take per capita and what should take per stirpes (Powers v. Morrison, 88 Texas, 133) ; and that intention must be preserved even though it should require the court to disregard some of the words or to supply words necessary to make plain the meaning of the law. The intention of the Legislature will not be sacrificed to a literal interpretation of the words used. Russell v. Farquhar, 55 Texas, 355. When a literal interpretation of the language used would produce an absurdity, the court will restrict or enlarge the text so as to conform to the general purposes and intent of the Legislature. People v. Deavenport, 91 N. Y., 585.

A literal construction of the following phrase embraced in article 1695, "or any other relations of the deceased standing in the *first* and *same* degree," would produce an absurdity, for "same" as there used with the copulative conjunction "and" refers back to "first" and means

the same as the first degree, which would be equivalent to saying, "in the first and first degree." This can be easily avoided by giving to the word "and" the meaning of "or" and reading the phrase, "in the first or same degree." Mr. Sutherland in his work on Statutory Construction, section 252, says: "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context." This proposition is well sustained by authority and the method of construction has been frequently resorted to for the purpose of reconciling what would otherwise be a conflict between the language employed and the purpose and intent of the act. The same result can be reached and the correctness of this construction demonstrated by reading into article 1695 that which is implied as follows: "When   *   *   *   any other relations of the deceased standing in the first degree come alone into partition, they shall take per capita; that is to say, by persons; and when any other relations of the deceased standing in the same degree come alone into the partition, they shall take per capita; that is to say, by persons." The author of that act undertook to embrace in this clause all classes of heirs not designated. The construction sought by defendants in error would defeat that purpose, leaving all heirs except those in the first degree, and brothers and sisters, uncles and aunts, subject to the common law, which would make the law of descent incongruous with no reason for such distinction. The intent to produce such consequences will not be attributed to the Legislature unless it plainly appeared from the language used. Suth. Stat. Const., sec. 324.

There being no children of S. P. Emerson nor their descendants and no wife, neither father nor mother, brothers nor sisters, grandfather nor grandmother, the class of persons next in collateral kinship to the decedent was ascertained by finding the nearest lineal descendants of the paternal grandfather and grandmother, and the testimony shows that this class consisted of eight first cousins, five of whom were living and three were dead, the latter leaving children who were entitled to participate in the partition; therefore, under the plain provision of article 1695, the estate must be divided into eight equal parts, one part to be allotted to each of the surviving first cousins, and one part to the children of each of the deceased first cousins; that is, each set of children are entitled to the portion that their ancestor would be entitled to if living, to be divided among them equally.

We conclude that the Court of Civil Appeals erred in reversing the judgment of the District Court and in rendering judgment for the appellants. It is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

*Reversed and judgment of District Court affirmed.*