Martha May ROGERS, Appellant,

v.

The FIRST NATIONAL BANK OF MIDLAND, Texas, Administrator of the Estate of Myrtle Cato Mendel, Deceased, et al., Appellees.

No. 6051.

Court of Civil Appeals of Texas.

El Paso.

Nov. 12, 1969.

Rehearing Denied Dec. 10, 1969.

Gibson, Oschner, Adkins, Harlan & Hankins, Sterling E. Kinney, Amarillo, Robert C. Thaxton, Jr., San Diego, Cal., for appellant.

Blanchette, Smith & Shelton, Robert W. Smith, Thompson, Knight, Simmons &

Bullion, Jerry P. Jones, Buford P. Berry, Dallas, for appellees.

## OPINION

FRASER, Chief Justice.

This suit was filed by the Administrator of the Estate of Myrtle Cato Mendel, deceased, to determine the heirship of the decedent on the paternal, or Cato, side of the family. That portion relating to the maternal line of the family was severed from the present controversy and has been heretofore finally disposed of by this court.

The trial court held that paternal cousins of the half blood inherited from the decedent, who also left surviving a paternal cousin of the whole blood. The appellant is the only surviving paternal cousin of the whole blood and maintains that she should inherit the entire paternal share of the estate to the exclusion of paternal cousins of the half blood. As between the two sets of the paternal cousins of the half blood, they, as appellees, agree that the trial court was correct in its holding that cousins of the half blood share in the inheritance, but between the two sets of cousins of the half blood there is a dispute as to the correctness of the method of allocation adopted by the trial court.

Myrtle Cato Mendel died intestate in Pecos County, Texas, on August 29, 1966. Her husband had predeceased her, and she was not survived by children or the descendants of children, or by father, mother, brother, sister, niece, nephew, uncle, aunt, nor by either grandfather or grandmother on the paternal side. The paternal grandparents of the decedent were J. A. Cato and Martha Higgins Holman Cato, who married in 1866. Each of these paternal grandparents had been previously married and each had children by the former marriage and then had children by their own marriage; and so these two grandparents were involved with three families—his children, her children and their children. At the time of the death of Myrtle Cato Men-

del, all of the children of J. A. Cato and of Martha Higgins Holman Cato were deceased, whether "his children", "her children", or "their children". The appellant, Martha May Rogers, is the only surviving descendant of the group of children common to both the said grandfather and grandmother, as both J. A. Cato and Martha Higgins Holman Cato were the grandparents of the appellant and of the deceased, Myrtle Cato Mendel. However, including the appellant, Martha May Rogers, there were seventeen living grandchildren or deceased grandchildren represented by sets of living descendants of J. A. Cato and his first wife; of Martha Higgins Holman Cato and her first husband, or of their last marriage. The trial court, therefore, to give effect to his interpretation of the provision of Section 38(a) 4, and likewise to Section 41(b) of the Texas Probate Code, divided the paternal estate, or moiety, into eighteen equal shares, and then gave to the appellant, Martha May Rogers, as a collateral kindred of the whole blood, $\frac{2}{18}$ths or $\frac{1}{9}$th of the paternal estate or moiety. As collateral kindred of the half blood, a $\frac{1}{18}$th share of the paternal estate was awarded to the remaining grandchildren who were alive, and a $\frac{1}{18}$th to the sets of children, or descendants, of each deceased grandchild leaving living descendants. The trial court basically, in effect, followed the solution to the problem offered by Professor Bailey in his "Texas Law of Wills", Section 54, paragraph (3) (b) at page 90. We affirm the judgment of the trial court.

For purposes of our discussion, the descendants of the first marriage of J. A. Cato are designated herein as the "Cato appellees", and the descendants of the first marriage of Martha Higgins Holman Cato are designated as the "Holman appellees".

The issue in this case is one of statutory construction of the above-mentioned sections of the Texas Probate Code, the sections being as follows:

"§ 38(a) 4. If there be none of the kindred aforesaid, then the inheritance

shall be divided into two moieties, one of which shall go to the paternal and the other to the maternal kindred, in the following course: To the grandfather and grandmother in equal portions, but if only one of these be living, then the estate shall be divided into two equal parts, one of which shall go to such survivor, and the other shall go to the descendant or descendants of such deceased grandfather or grandmother. If there be no such descendants, then the whole estate shall be inherited by the surviving grandfather or grandmother. If there be no surviving grandfather or grandmother, then the whole of such estate shall go to their descendants, and so on without end, passing in like manner to the nearest lineal ancestors and their descendants."

"§ 41(b). Heirs of Whole and Half Blood. In situations where the inheritance passes to the collateral kindred of the intestate, if part of such collateral be of the whole blood, and the other part be of the half blood only, of the intestate, each of those of half blood shall inherit only half so much as each of those of the whole blood; but if all be of the half blood, they shall have whole portions."

Appellant's primary contention is to the effect that in searching for a class among which to partition an estate, we must first look to Section 38, and in this instance we are stopped at the grandfather and grandmother and their descendants; that Section 41(b) does not call to any kindred to inheritance; it merely admits those of the half blood who are already called in Section 38, which, as to deceased grandparents, calls for "their descendants". This term, therefore, does not include those who are not descendants of the grandfather, and it does not include those who are not descendants of the grandmother. Appellant cites cases where, in each instance, the antecedent of "their" was specific individuals and in each case the courts held that the word in that context could be construed only in its collective sense.

Evans v. Opperman, 76 Tex. 293, 13 S.W. 312; Young v. State, 42 Tex.Crim. 301, 59 S.W. 890; Thomson v. Phillips, Tex. Civ.App., 347 S.W.2d 832. Cases to the contrary, however, are Shepard v. Wilson, 61 Ohio App. 191, 22 N.E.2d 568 (Ct.App., Ohio 1938); Lehman v. Lehman, 215 Pa. 344, 64 A. 598 (Penn.1906); Stigler v. Stigler, 77 Va. 163; which brings us to the main point that the cases, generally, stand for the proposition that in statutory construction, or the construction of a will or other instrument, one must determine what was intended by the writers and the words be construed in order to effectuate that intent. The statute as a whole must be reviewed to determine the legislative intent. As stated in Lacy v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496 (1928):

"In construing any statute, as indeed any instrument, the intention of the framers is the prime inquiry. While the occasion for the inquiry is usually what a particular provision, clause or word means, yet to answer the inquiry 'one must proceed as he would with any other composition—construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently each part or section should be construed in connection with every other part or section and so as to produce a harmonious whole. It is not proper to confine the intention to the one section to be construed. It is always an unsafe way of construing a statute or contract to divide it by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of

and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution.' "

This thought has been applied to our statutes of descent and distribution. Witherspoon v. Jernigan, 97 Tex. 98, 76 S.W. 445 (1903). The argument advanced by the appellant seems to us to be contrary to the terms of Section 41(b). The appellant, herself, is a collateral kindred of the intestate. If the section means anything, it applies to the appellant as well as to the appellees, and to the benefit of the appellant. The thought in the argument advanced by the appellant was used by the unsuccessful party in Kieke v. Harmel, 297 S.W. 286 (Tex.Civ.App. Ft. Worth, 1927), involving the rights of brothers and sisters of the half blood where the court, in discussing the statutes, before the adoption of the Probate Code, stated:

"Article 2570 declares that the property of the person who shall die intestate shall descend and pass in 'parcenary to his kindred, male and female.' No distinction in the degrees of relationship of the 'kindred' is here made, and article 2573 expressly designates children of the half blood as inheritable kindred, and no distinction in this article is made in the right of inheritance, the distinction being as to the relative shares between the whole blood and half blood children."

Adopting the reasoning contained in the early case of Marlow v. King, 17 Tex. 177 (1856), and with apologies to Chief Justice Hemphill, we say that the only question is whether the term "descendants" includes, as well, descendants of the half as those of the whole blood. The term is general, and those of the half, as well as those of the whole, blood come strictly within its scope and signification. If there could be any doubt on the subject, that is dissipated by the provision in Section 41(b) which declares that where the inheritance is directed to pass to the collateral kindred of the intestate, if part of such collaterals be of the whole blood and the other part of the half blood only, those of the half blood shall inherit only half as much as those of the whole blood. This is a qualification of the grant in the preceding section to "their descendants", showing that descendants of the half blood were not excluded, but that they were entitled only to half as much as those of the whole blood. The section speaks of collaterals, not of brothers and sisters or uncles and aunts or cousins, and we feel that if the legislature had intended that only one or more of these groups were the collaterals of the half blood who took, it would so have limited the half bloods who would take, rather than to refer to collateral kindred. This fact clearly evidences the legislative intent that there is no exclusion from inheritance of half blood, and the only distinction to be given to a relative of the half blood is with respect to the size of the share to be received. The words "their descendants" is construed to mean all the persons who are descendants of either grandparent. The appellant's point of error is overruled.

■ But while the Cato appellees agree with the above, they urge that the trial court was in error in the method of allocation, and that the trial court should have adopted the alternative solution offered by Professor Bailey's text (supra), in paragraph (3) (a) at page 90. We suspect the suggestion is made due to the fact that the shares due to the Holman appellees outnumber ten to six the shares due to the Cato appellees. They use their argument which they advanced against the contention of the appellant: that each descendant of J. A. Cato should receive exactly the same share which he or she would have received if J. A. Cato had predeceased the decedent and Martha Higgins Holman Cato had survived the decedent, and that the descendants of Martha Higgins Holman Cato should receive exactly the share that each would have received had Martha Higgins Holman Cato predeceased the decedent and J. A. Cato had survived the decedent. In other words, the Cato

appellees urge that there first be a division of the paternal estate into two parts, with one part being distributed to the descendants of J. A. Cato, and one part being distributed to the descendants of Martha Higgins Holman Cato. But the facts in our case preclude this contention of the Cato appellees from being successful, as both said grandparents predeceased the decedent in our case; and the statute does not then provide for division into additional moieties; and "their descendants" means all the persons who are descendants of either grandparent, and with each collateral kindred of the half blood receiving half as much as collateral of the whole blood. The position of the Cato appellees is overruled.

The trial court having decided both points correctly, the judgment is affirmed.