

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

June 29, 1973

The Honorable Fred Head          Opinion No. H- 55
House of Representatives
Capitol Building                 Re:    The construction of
Austin, Texas                            House Bill No. 8

Dear Representative Head:

You have submitted to us House Bill No. 8, adopted by the 63rd
Legislature and ask 17 specific questions concerning its construction.

In general, House Bill 8 amends Title 87 of the Revised Civil
Statutes by adding thereto Article 5428a. (References hereafter are
to sections of Article 5428a unless otherwise noted.)

Section 1 contains definitions. Section 2 requires each candidate
(defined as any member or candidate for the House who has announced
that he will seek election to the Office of Speaker) to keep records of
all information required by the Article.

Section 3 requires each candidate to file a sworn statement with
the Secretary of State on the first day of January, March, May, July,
September and November and the day preceding each Regular and Called
Session of the Legislature, until all campaign loans have been repaid,
listing: (1) each contribution of money received by him, or by others in
behalf of his campaign: (2) each contribution of services and other things
of value other than money received by him or others in behalf of his cam-
paign, giving the nature of the contribution, etc. ; (3) each loan made to
him or others in behalf of his campaign, including specific information
concerning such loan; (4) each expenditure of funds made by him or in
his behalf in excess of $10; and (5) his sworn statement on an official form
designated by the Secretary of State.

Section 4 has to do with filing. Section 5 provides penalties for
those who willfully fail to file the statement. Section 6 provides that all
statements filed under the statute shall be open to public inspection.
Section 7(a) prohibits corporations, partnerships, associations, firms,
unions, foundations, committees, clubs or other organizations or groups
of persons from contributing or lending or promising to contribute or

lend money or other things of value to any candidate or other person for the purpose of aiding or defeating the election of any candidate. Subsection (b) excepts loans made in the due course of business to a candidate for campaign purposes by a corporation legally engaged in the business of lending money. Subparagraph (c) provides penalties for violation of subsection (a) and subsection (d) provides for punishment of any candidate who knowingly receives such illegal contribution or loan.

Section 8 provides penalties for a conspiracy to circumvent any of the provisions of the Act.

Section 9 sets those purposes for which a candidate may expend campaign funds and provides a penalty in the event of expenditure of any funds for any other purpose.

Section 10 provides in subsection (a);

> "Any individual other than a candidate may contribute his personal services and traveling expenses to aid or defeat any candidate and may expend a sum, which may not exceed $100 in the aggregate, for the cost of correspondence to aid or defeat the election of any candidate."

Subsection (b) provides that all other campaign expenditures must be made by the candidate from campaign funds and (c) that any individual other than a candidate who expends or authorizes the expenditure of funds in excess of $100 for correspondence or who expends any funds for any other purpose except personal services and traveling expenses commits a misdemeanor.

Section 11 excepts from those allowed to make contribution of personal services, money or goods to any candidate, persons who are elected officers or employees of either the executive or judicial branches of the state government and makes its violation a misdemeanor.

Section 12 requires that all prosecutions under the Act must be brought by indictment rather than by complaint and information.

The object of construction of a statute is to ascertain the legislative intent, and not to defeat, nullify, or thwart it. City of Mason v. West Texas

Utilities Co., 237 S. W. 2d 273 (Tex. 1951).   The entire act must be con-
strued in the light of all of its provisions, obligations and requirements.
Texas Turnpike Authority v. Shepperd, 279 S. W. 2d 302 (Tex. 1955);
Rogers v. First National Bank of Midland, 448 S. W. 2d 149 (Tex. Civ.
App., 1969), err. ref'd, n. r. e.).   A reasonable construction should be
given, not one that would lead to absurd conclusions.   McKinney v.
Blankenship, 282 S. W. 2d 691 (Tex: 1955).

Your first question is:

> "Subject to the prohibitions found in Section 11
> of H. B. 8, may any individual contribute money directly
> to a candidate's campaign fund?   If so, is there any
> limitation upon the amount of money such individual
> may contribute directly to a candidate's campaign fund?"

Section 10(a) alone would seem to limit individual contributions to
personal services and traveling expenses, and a sum not to exceed $100 for
the cost of correspondence.   However, § 3(1) contemplates that a candidate
will receive contributions of money.   Since § 7(a) makes it illegal for any-
one but an individual to contribute, it must be that, in addition to those
rights specifically conferred by § 10(a), individuals may also contribute
funds.   There is no limitation on the amount which they may contribute.

Your second question asks:

> "Subject to the prohibitions found in Section 11
> of H. B. 8, may any individual contribute services
> and other things of value directly to a candidate?   If
> so, is there any limitation upon the amount of services
> and other things of value such an individual may con-
> tribute directly to a candidate?"

Our answer to Question 2 is the same as our answer to Question 1.
Section 3(2) recognizes that a candidate may receive contributions of ser-
vices and other things of value other than money (which may not be contri-
buted by any corporation or other entity than an individual, under § 7.
There would be no limitation as to the amount or value of the services
and things thus contributed.

Your third question asks:

"May an individual contribute the use of transportation devices, operators of same, and expenses attributable thereto, to a candidate for use by the candidate in behalf of his campaign? if so, is there any limitation on the value of the transportation, operators of same, and expenses attributable thereto that an individual may contribute?"

It is our opinion that when § 3(2), speaking of contributions "of services and other things of value, other than money," includes contributions of the type about which you ask. Therefore our answer to Question 3 would be substantially the same as our answers to 1 and 2. There would be no limitation as to the value.

Your fourth question is:

"Is it legal for a member of the Texas Legislature to contribute money, services, and other things of value to a candidate in behalf of his campaign? Please consider all Texas statutory law, the State Constitution and the Rules of the Texas House."

Construction of the Rules of the Texas House of Representatives is a responsibility, in the first place, of the Speaker himself, and secondarily, of the Parliamentarian. We feel it would be inappropriate in this context for us to attempt to tell the House of Representatives what its rules mean and therefore we decline to answer insofar as that portion of your question is concerned. With reference to the Texas statutes, other than prohibitions against bribery and similar statutes of general application, we find no law prohibiting a contribution by a member of the Legislature to a candidate for Speaker of the House. Nor do we believe that the Texas Constitution would inhibit such contribution. House Bill 8 would prohibit members and employees of the executive and judiciary departments from contributing, thus raising a question as to Equal Protection; nevertheless, we feel that this represents a reasonable classification which would be up-

held by the courts. <u>Bjorgo v. Bjorgo</u>, 492 S. W. 2d 143 (Tex. 1966); <u>Buchanan v. State</u>, 480 S. W. 2d 207 (Tex. Crim. 1972).

Your fifth question is:

"In reporting the contribution of services or other things of value if a candidate required to state the estimated value of such service or things of value?"

Section 3(2) requires that the sworn statement of the candidate filed with the Secretary of State shall list the following information:

"(2) Each contribution of services and other things of value . . . , the nature of the contribution, the complete name and address of the contributor, and the date and value of the contribution; . . . ."

We believe therefore that the answer to your fifth question is "Yes."

Your sixth question asks:

"What does the term 'correspondence' mean as used in Section 10(a) of H. B. 8?"

In construing statutes we are required by Article 10, Vernon's Texas Civil Statutes, to give words their ordinary signification unless they are words of art. "Correspondence" is not a word of art. It has a number of meanings among which are: (1) the state or condition of agreement of things or of one thing with another; (2) the communication between persons by an exchange of letters; any communication by letters; (3) the letters exchanged by correspondents; etc. (<u>Webster's Third New International Dictionary</u>, 1967). We are of the opinion that to attribute to "correspondence," as used in § 10, any meaning other than the second stated above would be to ignore the obvious intent of the Legislature and to give to the statute an unrealistic meeting. Thus it is our understanding and opinion that § 10(a) permits an individual to spend not to exceed $100 for the cost of communicating with other persons by letter, the cost to be composed of the cost of preparing the letter and the cost of postage.

Your seventh question is:

"Does the term 'in the aggregate' as used in Section 10(a) of H. B. 8 refer to the total expenditures of any individual for the cost of correspondence from the effective date of H. B. 8 until the time of election or defeat of a candidate or does it refer to expenditures relating to specific transactions separate and apart from other subsequent transactions?"

It is our opinion that the word must mean the aggregate of all costs for correspondence during the campaign.

Your eighth question asks:

"Is a candidate required to report expenditures for correspondence made by another individual in behalf of said candidate's campaign when paid by such other individual?"

Section 3 governing the report to be filed by each candidate requires the report of money received, of the contribution of services and other things of value received by him or others in behalf of his campaign, of loans made to him or such others, and of each expenditure of campaign funds made by him, "his agents, servants, staff members, or employees in behalf of his campaign." It would not seem to cover expenditures made by others not on his staff but not contributed to his campaign as funds or spent by him. Therefore, our answer to question 8 would be that a candidate is not required to report expenditures for correspondence made by another individual not on his staff when they are paid by another individual.

Question nine asks whether a candidate is required to report personal services of another individual in his behalf when paid by such other individual. While an individual is authorized to contribute his personal services, we see nothing in the Act which would authorize an individual to purchase personal services of another in behalf of the campaign. However, in either event, § 3(2) would seem to require the candidate to report each contribution of services received by him.

The Honorable Fred Head, page 7 (H-55)

Your tenth question is:

"Is a candidate required to report traveling expenses of another individual in behalf of said candidate's campaign when paid by such other individual?"

If an individual, while contributing his own personal services, travels and incurs expenses which he himself pays, we do not believe that the candidate is required to report those expenses, provided the individual is not on the candidate's staff. [Sec. 3(4)]

Your eleventh question asks:

"May a candidate expend funds for travel expenses incurred by House members attending political and other meetings in behalf of his candidacy?"

Section 9(a)(1) lists as a permissible expenditure of campaign funds: "travel for the candidate, his immediate family, and his campaign staff." If another member of the House is also a member of the candidate's campaign staff then it is our opinion that the candidate may expend funds for his travel expenses. If he is not a member of the staff, then his expenses cannot be paid.

Your twelfth question asks:

"May a candidate expend funds for travel expenses incurred by nonpaid staff and supporters attending political and other meetings in behalf of his candidacy?"

Referring again to § 9(a)(1) of the act, it is our answer that as to the campaign staff, whether paid or not, campaign funds may be used to cover the expense of travel. Travel expenses for persons who are merely supporters but not staff members and not members of the candidate's family could not legitimately be paid.

Your thirteenth question asks:

"Does H. B. 8 require the filing of expenditures
made in behalf of a speaker's campaign of less than
$10.00? If so, must such a filing list name of person
paid and purpose of expenditure?"

Section 3(4) in defining expenditures which must be reported states:

"Each expenditure of campaign funds made by
him, his agents, servants, staff members or employees
in behalf of his campaign, the complete name and address
of each person to whom a payment in excess of ten dollars
($10.00) is made and the purpose of each expenditure. . . ."

The ten dollar limitation, in our opinion, only applies to the listing of
the name and address of the recipient and the report must list each expendi-
ture and must give the purpose of each expenditure. The name of the reci-
pient is to be listed only in the event the expenditure exceed $10.

Your fourteenth question asks:

"Does the prohibition found in Section 11 of
H. B. 8 violate any state or federal constitution
provision?"

We have previously alluded to the exclusion by § 11 of officers or em-
ployees of either the executive or judicial branch of the state government
from those who may contribute services, money or goods toward the candi-
dacy of any person for the office of Speaker of the House of Representatives.
The problem, if there is one, is one of equal protection guaranteed both by
the Federal and the State Constitutions. However, under each Constitution,
the Legislature may classify persons and treat persons differently. So long
as the classification is not arbitrary and capricious, it is not unconstitutional.

Where, as in this case, the election involved concerns the inner work-
ings of the legislative branch of the government, we are not able to state

that exclusion of influence by the executive and judicial branches is without reason or is impermissible. It is our opinion therefore that § 11 does not violate any State or Federal constitutional provision.

Your fifteenth question asks:

> "Other than the prohibitions of Section 11 of H. B. 8, are State officials or employees in any way prohibited from contributing money, services, and other things of value directly to a candidate's campaign fund?"

It is our opinion that state officials or employees, other than those excluded by § 11, are not prohibited from contributing money, service and other things of value directly to a candidate's campaign fund.

Question sixteen asks:

> "May all entities that are legally engaged in the business of lending money and that have continuously conducted such business for more than one year make loans to a candidate?"

After excluding from those who might contribute to a candidate's fund corporations, partnerships, associations, firms, unions, foundations, committees, clubs or other organizations or groups of persons, § 7(b) states:

> "This section does not apply to loans made in the due course of business to candidate's for campaign purposes by a corporation that is legally engaged in the business of lending money and that has continuously conducted the business for more than one year prior to the making of the loan."

The provision is unambiguous and applies only to corporations. Other entities, even though legally engaged in the business of lending money, etc., are prohibited by § 7(a) from making loans to candidates.

The Honorable Fred Head, page 10 (H-55)

Your seventeenth question asks:

"May individuals make loans to a candidate in behalf of the candidate's campaign?"

Since individuals are not prohibited by §7(a) from lending money to a candidate and since there is no limitation or prohibitions upon the amount which may be donated by an individual to a candidate, it is our opinion that individuals may make loans to a candidate in behalf of his campaign.

## SUMMARY

House Bill 8, for the most part, is unambiguous and must be read literally with reference to who may and may not contribute to the campaign of candidates for election to the office of Speaker of the House, the amounts of such contributions, the extent of expenditures which may be made of campaign funds, and other similar matters.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee