# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00283-CV

**Keith Edward Deinhart, III, Appellant**

**v.**

**Vali Anna McGrath-Stroatman, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 274TH JUDICIAL DISTRICT
### NO. 06-1280, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Keith Edward Deinhart, III, ("Trey") appeals the trial court's final divorce decree making Trey and appellee Vali Anna McGrath-Stroatman joint managing conservators of their two children and giving Vali the right to designate the children's primary residence, with a geographic restriction.[1]  In a single issue, Trey complains that the jury's answer identifying two geographic areas within which Vali must designate the primary residence conflicts with its preceding answer that there should be a geographic restriction and with section 153.134(b) of the Texas Family Code.  *See* Tex. Fam. Code Ann. § 153.134(b) (West 2008).  Because we find no error in the divorce decree, we affirm the trial court's judgment.

---

[1] We refer to the parties by their first names, consistent with appellant's brief.  Appellee did not file a brief.

## FACTUAL AND PROCEDURAL BACKGROUND

Trey and Vali met in approximately 1999, and soon afterward, Trey moved into the home that Vali shared with her son from a previous relationship, her mother, and her three siblings. Trey and Vali never formally married but signed a common law marriage certificate in approximately 2000. Their first child was born in 2000, and approximately three years later, they moved out of Vali's family home and into a separate residence. They subsequently purchased a home in Kyle, Texas. Trey and Vali separated in June 2006, shortly before their second child was born. Trey visited the children several times after moving out. Within two months of the birth of their second child, Vali and the children moved to Eureka, California, to live with Vali's aunt. Vali and the children subsequently moved into their own residence in Eureka.

**The Pre-Trial Litigation**

In July 2006, Trey filed a petition for divorce in Hays County, Texas. Initially, Trey was unable to locate Vali for service of process. The trial court set a hearing on temporary orders for August 9, 2006, and again for September 13, 2006. The record is not clear, but it appears that because Vali had not been served, the hearings were not held. At some point in late 2006 or early 2007, Trey located Vali through a private investigator, and on January 9, 2007, she was served with citation. Vali filed a response in late January but did not return to Texas. In April 2007, the trial court entered temporary orders appointing Trey and Vali temporary joint managing conservators of the children and giving Vali the exclusive right to designate the children's primary residence within Hays County. Trey and Vali reached an agreement in May 2007 that she and the children could

2

continue to reside in Eureka until June 30, 2007, so that the oldest child could complete the school year there.

Following her return to Texas, Vali filed a counterpetition, seeking to be appointed sole managing conservator of the children. The case was heard by an associate judge in late May 2008. The associate judge's recommendations included that Trey and Vali be named joint managing conservators and that Vali be named as the joint managing conservator with the exclusive right to designate the primary residence of the children without regard to geographic location. Trey appealed from the associate judge's recommendations, challenging the recommendation regarding the designation of the children's primary residence and two others. Subsequently, the parties agreed to a parenting plan which resolved all issues except the designation of the children's primary residence.

**The Trial**

In a two-day trial *de novo*, seven witnesses testified, including Trey, Vali, and Trey's mother and grandmother.[2] The primary factual disputes concerned whether Trey had abandoned his family and whether Kyle, Texas, or Eureka, California, would provide the better environment as the primary residence of the children. Trey and Vali testified regarding their relationship and home life and the circumstances of their separation. They also testified, along with Trey's mother and grandmother, concerning the amount of financial and other support Trey and his family gave Vali after Trey moved out and following the birth of the couple's second child.

---

[2] Other witnesses who testified included Trey's sister, girlfriend, and employer.

3

Trey and Vali both testified that their relationship had been troubled over the years and that Trey had left for short periods of time on a number of occasions. It was undisputed that Trey left Vali approximately two weeks before their second child was born and moved in with another woman. It was also undisputed that Trey visited Vali and the baby in the hospital and took them home and that, within two months, Vali moved to California with the children without telling Trey until afterward.

Trey also testified generally regarding his employment, his relationship with his children, and his support of Vali after he moved out. He stated that he was employed as a certified mechanic and that his motivation in working was to provide for his children. He also stated that he worked five days a week, including "basically . . . every Saturday." Trey further testified that, after he moved out, he had intended to visit the children every day but had done so only four to five times in the two weeks before their second child was born. He stated that after Vali returned to Texas, he had exercised his visitation rights with the children, and when he had to work, his girlfriend cared for them. He further stated that after their second child was born, Vali asked him for money, he gave her $300, and she was "fully stocked" on groceries and diapers. He added that he continued to make the house payments and pay the household bills after he moved out.

In addition to testifying about Vali and Trey's relationship, Trey's mother and grandmother testified concerning their support of Vali and the children after Trey left his family. Trey's mother testified that the only financial help she gave Vali after learning that Trey had moved out permanently was $40 to buy gas and that the only other assistance she provided was to pick up some prescriptions and a few groceries once at Vali's request. Trey's grandmother testified that she

4

made blankets and bought clothes and diapers before the baby was born and, at Vali's request, kept the older children for a brief time after Trey moved out.

In addition to her testimony regarding her relationship with Trey, Vali testified concerning her family background, the support she received after Trey moved out, her relocation to and life in California, and her relationship with her children. She testified that her mother had died six months before the birth of her and Trey's second child. She stated that she had never known her biological father, her mother and stepfather separated when she was nine years old, and her stepfather lived near Eureka. She further stated that one of her sisters was in jail, her other sister and her brother lived in Eureka, and she had a number of cousins in California.

Vali further testified that when she was pregnant with her and Trey's second child, she was not working, Trey paid for everything, and when she needed something, Trey would give her cash. She stated that Trey did not give her any money after he moved out and she was not stocked up on groceries. She also stated that she asked Trey's mother to pick up prescriptions and groceries after she came home from the hospital because Trey had agreed to bring them but had not done so. She testified that, after Trey's mother brought the prescriptions and groceries, "nobody came back out to the house." She also testified that she talked to her aunt about moving to Eureka after she received a 24-hour notice of cut-off from the gas company, called Trey, and he "wouldn't call [her] back."

Vali testified that she moved to Eureka because she needed help, there was nobody in Texas to help her, and her family lived in California. She stated that while in California, she had trained to become a certified nurse's assistant and obtained full time employment at a rehabilitation

5

home. She further stated that in California she had received state aid, including child care, and additional assistance with child care from her family. Vali also testified that her oldest child, who had fallen behind in school before they moved, had received additional help at his school in California. She stated that since her court-ordered return to Texas, Trey's family had not given her much assistance. She further stated that in Texas, she is able to work as a nurse's assistant for private individuals, but not in a facility, because her certification is in California.

Vali described her relationship with her children as close and nurturing. She stated that she had concerns about their being cared for by Trey's girlfriend, who worked five nights a week and also had three children of her own. Vali further testified that if she were to move back to California, she would have no problem with Trey's coming to visit and that she would be "willing to share the burden as far as traveling back and forth to see the kids and extra time with him."

**The Jury's Verdict**

The trial court submitted three questions to the jury, which answered as follows:

Question 1

Which Joint Managing Conservator should have the exclusive right to designate the primary residence of the children?

Answer by writing the name of the Joint Managing Conservator.

Answer: Vali Anna McGrath-Stroatman

6

Question 2

        Should the Joint Managing Conservator you have named in Question 1 above be permitted to designate the primary residence of the children without regard to geographic location or with a geographic location?

        Answer by writing "without regard to geographic location" or "with a geographic restriction."

        Answer: With a geographic restriction

        If you have answered Question 2 "with a geographic restriction" answer Question 3.  Otherwise, do not answer Question 3.

Question 3

        State the geographic area within which the Joint Managing Conservator must designate the primary residence of the children.

        Answer: 100 mile radius of Eureka, California and 150 mile radius of Kyle, Texas

The trial court entered judgment on the verdict.  Trey filed a motion for judgment notwithstanding the verdict, a motion to reform the judgment, and a motion for new trial, all of which the trial court denied.  This appeal followed.

**Conflict in Jury Answers**

        In a single issue, Trey complains that the jury's answer to question 3 conflicts with its answer to question 2 and with section 153.134(b) of the Texas Family Code.  *See* Tex. Fam. Code Ann. § 153.134(b).[3]  Specifically, he argues that the jury's answer to question 3 could be construed

---

[3]  Section 153.134(b) provides in relevant part:

(b) In rendering an order appointing joint managing conservators, the court shall:

7

to establish two geographic areas and therefore does not establish a geographic area as required by section 153.134(b)(1)(A). *See id.* § 153.134(b)(1)(A).

Although Trey does not expressly state the basis for his contention that the answer to question 3 could be interpreted to establish two areas, based on the record, we construe his issue to be a complaint that the jury's use of the word "and" instead of the word "or" between the two geographic areas renders its answers ambiguous or unclear, resulting in a failure to clearly establish an area and thus conflicting with its answer to question 2 and with the requirement in section 153.134(b)(1)(A) that a geographic restriction be specified. *See id.* If jury findings are ambiguous or unclear, we must try to interpret the findings so as to uphold the judgment. *St. Joseph's Hosp. v. Wolff*, 94 S.W.3d 513, 531 (Tex. 2002); *Jackson v. United States Fid. & Guar. Co.*, 689 S.W.2d 408, 412 (Tex. 1985). "It is a fundamental rule of law that it will not be presumed that jurors intend to return conflicting answers." *Hogg v. Washington Nat'l Ins. Co.*, 503 S.W.2d 325, 328 (Tex. App.—Tyler 1973, no writ) (citations omitted). We may not find a conflict in a jury's answers when there is any reasonable basis upon which to reconcile them. *Luna*

---

        (1) designate the conservator who has the exclusive right to determine the primary residence of the child and:

            (A) establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; or

            (B) specify that the conservator may determine the child's primary residence without regard to geographic location.

Tex. Fam. Code Ann. § 153.134(b) (West 2008).

*v. Southern Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex. 1987) (citing *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980)).

In this case, any ambiguity in the jury's answers turns on its use of the word "and" between the two geographic areas it designated in answer to question 3. Although "and" is conjunctive and "or" is disjunctive and the two are not usually interchangeable, the word "and" may be construed as disjunctive to give effect to the manifest intent and avoid an absurd result. *Elgin Bank v. Travis County*, 906 S.W.2d 120, 121 (Tex. App.—Austin 1995, writ denied); *Neighborhood Comm. on Lead Pollution v. Board of Adjustment*, 728 S.W.2d 64, 68 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). One of the recognized usages of "and" is to refer to "either or both of two alternatives, esp[ecially] in legal language when [it] is also plainly used to mean *or*." *Webster's Third New International Dictionary* 80 (2002); *Neighborhood Comm.*, 728 S.W.2d at 68; *see also Witherspoon v. Jernigan*, 76 S.W. 445, 447 (Tex. 1903) (interpreting statutory use of "and" to mean "or" to avoid absurd result and conform to general purposes and intent of legislature and noting use of the two words is loose and frequently inaccurate).

To construe the word "and" in the jury's answer to question 3 as conjunctive would lead to an absurd result. *See Elgin Bank*, 906 S.W.2d at 121. Clearly, a managing conservator cannot simultaneously establish her children's *primary* residence in two separate locations. We conclude that the jury's intent was to give Vali, as managing conservator with the right to designate the children's primary residence, the right to choose between the two named alternative geographic areas. In order to give effect to the intent of the jury and to avoid an absurd result, we construe "and" in the jury's answer to question 3 to mean "or." We further conclude that, by establishing

9

two alternative areas, the answer to question 3 does establish a geographic area and therefore does not conflict with the answer to question 2 or with the requirement of section 153.134(b)(1)(A) that a geographic restriction be specified.[4] *See Neighborhood Comm.*, 728 S.W.2d at 68; Tex. Fam. Code Ann. §153.134(b)(1)(A).

**Legal Sufficiency of Evidence**

Although Trey complains of a conflict in the jury's answers in his stated issue, the focus of his complaint is Vali's right to designate the children's primary residence in California. He argues that the compelling evidence supported a geographic restriction to Hays County. We construe this argument as a challenge to the legal sufficiency of the evidence supporting the jury's finding of a geographic restriction allowing relocation to California.

We will sustain a legal sufficiency challenge when the records shows any one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). More than a scintilla of evidence exists if the evidence is such that reasonable and fair-minded

---

[4] We also note that this Court and at least one other court have previously affirmed judgments granting a managing conservator the option to establish the child's primary residence in one of several, noncontiguous locations. *See In re E.C.M.*, No. 07-09-00242-CV, 2010 Tex. App. LEXIS 5981, at *3, 11-13 (Tex. App.—Amarillo July 28, 2010, no pet.); *Strenk v. Strenk*, No. 03-01-00051-CV, 2001 Tex. App. LEXIS 7495, at *38-39 (Tex. App.—Austin Nov. 8, 2001, no pet.) (concluding that because family code does not require designation of *any* geographic restriction, designation of noncontiguous alternatives was allowed under prior version of section 153.134).

people could differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). When reviewing a jury finding for legal sufficiency, we view the evidence in the light most favorable to the finding, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 807. We indulge every reasonable inference that would support the finding. *Id.* at 822. The ultimate test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *See id.* at 827.

Trey also complains that the jury's finding of a geographic restriction allowing relocation to California conflicts with public policy, citing section 153.001 of the family code. Section 153.001 provides in relevant part as follows:

(a) The public policy of this state is to:

(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

Tex. Fam. Code Ann. § 153.001(a) (West 2008). Trey contends that the distance involved is so great as to disrupt his life, interfere with his employment, and impede his ability to exercise his duties and powers as a joint managing conservator.

In *Lenz v. Lenz*, the supreme court addressed the application of the public policy set forth in section 153.001(a) in the context of geographic restrictions. *See* 79 S.W.3d 10, 14 (Tex.

11

2002). *Lenz* involved an appeal from a modification order allowing a joint managing conservator to relocate to Germany and designate Germany as the children's primary residence. The supreme court first noted that in all suits regarding conservatorship and possession of and access to children, the best interest of the children "'shall always be the primary consideration of the court . . . .'" *Id.* (quoting Tex. Fam. Code Ann. § 153.002 (West 2008)). Observing that the family code is silent as to specific factors that the factfinder should consider in determining the best interest of the children in the context of geographic residency restrictions, the supreme court concluded that the public policy set forth in section 153.001(a) of the family code provides a framework for building guidelines for reviewing residency restrictions. *Id.*; *see also* Tex. Fam. Code Ann. § 153.001(a).

Because it was facing an issue of first impression in applying the state's public policy imperatives to interpret the modification standards in the relocation context, the *Lenz* court reviewed various factors considered by other jurisdictions, which the supreme court found to be based on a best-interest standard and thus reflective of this state's public policy. 79 S.W.3d at 14-16. Those highlighted factors included: (1) the reasons for and against the move, including the parents' good faith motives in requesting or opposing it; (2) comparison of education, health, and leisure opportunities; (3) the degree of economic, emotional, and educational enhancement for the custodial parent and the child; (4) the effect on extended family relationships; (5) accommodation of the child's special needs or talents; (6) the effect on visitation and communication with the noncustodial parent to maintain a full and continuous relationship with the child; (7) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the noncustodial parent and the child; and (8) the noncustodial parent's ability to relocate. *Id.* at 15-16. Further, the supreme

12

court noted that "no bright-line test can be formulated. Suits affecting the parent-child relationship are intensely fact driven, which is why courts have developed best-interest tests that consider and balance numerous factors." *Id.* at 19 (citations omitted).

With these considerations in mind, we turn to our legal sufficiency review.[5] Applying and balancing the *Lenz* factors within the framework provided by the public policy goals of section 153.001(a), we conclude that the evidence is legally sufficient to support the jury's finding of a geographic restriction allowing relocation to California. *See id.* The evidence showed that Trey left Vali and their children two weeks before the birth of their second child at a time when Vali was unemployed and financially dependent on Trey. There was evidence that Trey continued to make the house payments and pay most household bills.[6] However, although there was conflicting testimony concerning whether Vali was "fully stocked up" on supplies, there was testimony from four witnesses showing that Trey and his family provided Vali little additional financial or other support after Trey left. The evidence further showed that although Trey had a good, steady job, it required substantial weekend hours, which resulted in his leaving the children with his girlfriend during much of his visitation with the children.

---

[5] Although *Lenz* involved a modification proceeding and not an original proceeding, the factors the supreme court recited and applied are applicable in an appeal of a trial court's judgment imposing geographic restrictions in a divorce proceeding. *Lenz v. Lenz*, 79 S.W.3d 10, 11 (Tex. 2002); *In re K.L.W.*, 301 S.W.3d 423, 426 n.2 (Tex. App.—Dallas 2009, no pet.); *Morgan v. Morgan*, 254 S.W.3d 485, 488 (Tex. App.—Beaumont 2008, no pet.).

[6] We note, however, Vali's testimony that she received a 24-hour notice of cut-off from the gas company, indicating Trey's failure to timely pay all household bills, and that Trey failed to return her calls about the notice.

13

There was evidence that Vali's motive in moving was not vengeful or vindictive. Vali testified that she moved to California because she needed help, she had no one in Texas to help her, and her family lived in California. The evidence showed that in Eureka, Vali and the children would be closer to Vali's remaining family, who could provide economic and physical support. In contrast, Vali testified that after her court-ordered return to Texas, Trey had exercised his visitation rights, but he and his family had provided little assistance. Vali also testified that in California, she had received job training and obtained full time employment[7] and that her oldest children were doing better in school. The evidence showed that Vali has a very close relationship with her children and has deep concern for their well-being and education. Vali also stated that she has no desire to impede Trey's access to the children and is willing to help "share the burden" of long distance visitation and enable the children to have extra time with him.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there is more than a mere scintilla of evidence to uphold the jury's finding of a geographic restriction allowing relocation to California. *See id.* We must assume that the jury, as the sole judge of the credibility of the witnesses, credited Vali's testimony and found that the family environment in California provided increased well-being for the children and that allowing relocation to California was in their best interest, and we cannot substitute our opinion for that of the jury. *See City of Keller*, 168 S.W.3d at 819. On the record before us, we conclude that the evidence was

---

[7] Vali also testified that her employment opportunities as a certified nurse's assistant were limited in Texas because she was certified in California.

sufficient to allow reasonable and fair-minded people to reach the finding reached by the jury. *See id.* at 827.

Having concluded that there is no conflict in the jury's answers, we overrule Trey's issue.

## CONCLUSION

Because we conclude that there is no conflict in the jury's answers and that the evidence is legally sufficient to support the jury's verdict, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Jones, Justices Patterson and Henson

Affirmed

Filed:  November 10, 2010